**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WEBSTER CAPITAL FINANCE, INC., f/k/a CENTER CAPITAL CORPORATION,** : | | |
|     **Plaintiff,** : | **CIVIL ACTION** | |
| : | | |
|     v. : | | |
| : | **NO. 10-5207** | |
| **CHETTY BUILDERS, INC.,** : | | |
|     **Defendant.** : | | |

| | | |
|---|---|---|
| **WEBSTER CAPITAL FINANCE, INC., f/k/a CENTER CAPITAL CORPORATION,** : | | |
|     **Plaintiff,** : | **CIVIL ACTION** | |
| : | | |
|     v. : | **NO. 10-5208** | |
| : | | |
| **CARL E. CHETTY,** : | | |
|     **Defendant.** : | | |

| | | |
|---|---|---|
| **WEBSTER CAPITAL FINANCE, INC., f/k/a CENTER CAPITAL CORPORATION,** : | | |
|     **Plaintiff,** : | **CIVIL ACTION** | |
|     v. : | | |
| : | **NO. 10-5209** | |
| **C.B. AVIATION, LLC,** : | | |
|     **Defendant.** : | | |

**DuBois, J.**                                                                                              **May 20, 2011**

<u>**M E M O R A N D U M**</u>

## I.   INTRODUCTION

These three related cases center upon defendants' obligations under a loan agreement in which plaintiff Webster Capital Finance, Inc. ("Webster Capital" or "plaintiff") financed the purchase of an aircraft by defendant C.B. Aviation, LLC ("C.B. Aviation"). Alleging that

1

defendants defaulted on their loan repayment and guaranty obligations, plaintiff filed Complaints in Confession of Judgment for Money against all three defendants, relying on the warrant-of-attorney provisions in its agreements with defendants. On October 5, 2010, the Clerk of Court entered judgment against all three defendants in the amount of $4,259,299.72 plus interest.

Presently before the Court are defendants' Motions to Open Confessed Judgment and Motions for Stay. In their motions, defendants argue that: the judgments should be opened; execution of the confessed judgments should be stayed pending resolution of C.B. Aviation's litigation against a third party, Hawker Beechcraft Corporation ("HBC"), the manufacturer of the aircraft; and the attorney's fees in the warrant-of-attorney clauses are unreasonable and should be modified. For the reasons set forth below, defendants' motions are denied. The judgments will not be opened and execution of those judgments will not be stayed pending resolution of C.B. Aviation's litigation with HBC. The Court concludes, however, that the 20% attorney's fee included in the judgments is unreasonable and that the judgments should be modified so as to provide only a reasonable attorney's fee, and to accurately reflect the amount of defendants' remaining indebtedness to plaintiff. The Court will conduct a hearing limited to receipt of evidence and argument on those issues, and will thereafter modify the judgments. Execution on the judgments is stayed until the Court issues an order modifying the judgments.

## II.  BACKGROUND[1]

On February 20, 2008, plaintiff and C.B. Aviation entered into a contract—the Aviation Master Loan and Security Agreement No. 57416 ("Agreement")—in which plaintiff, as lender, agreed to finance C.B. Aviation's purchase of a 2002 Raytheon Aircraft Company Model 390 airplane ("the aircraft") from HBC, the manufacturer of the aircraft.  (Compl., Exs. A, C; C.B. Aviation's Mot. to Open Confessed J., at 3.)  Under the Agreement, C.B. Aviation granted to plaintiff a security interest in the aircraft; all proceeds (cash or non-cash), insurance proceeds, and any other rights arising from the disposition of the aircraft; and any concurrent payment or security deposit given by C.B. Aviation to plaintiff.  (Id. ¶ 3.)  Plaintiff filed a UCC Financing Statement on February 26, 2008, perfecting its security interest in the collateral.  (Compl. ¶ 8; id., Ex. H.)

On February 20, 2008, defendants Chetty Builders, Inc. ("Chetty Builders") and Carl E. Chetty ("Chetty") (collectively, "the Guarantors") each executed a Continuing Guaranty ("Guaranty") in which they "unconditionally and absolutely guarantee[d] to [plaintiff] the prompt payment of all indebtedness . . . due to plaintiff" in connection with the Agreement between plaintiff and C.B. Aviation.  (Compl. Against Chetty Builders, Ex. J; Compl. Against Chetty, Ex. J.)  The Guarantors ratified and confirmed the existence of the Guaranties on September 24, 2009.  (Compl., Ex. I.)

---

[1] The briefing in the three cases overlaps substantially.  Unless otherwise noted, citations refer only to documents filed in Webster Capital Finance, Inc. v. C.B. Aviation, LLC, No. 10-5209, even where identical arguments were raised in the briefs filed in Webster Capital Finance, Inc. v. Chetty Builders, Inc., No. 10-5207, and Webster Capital Finance, Inc. v. Carl E. Chetty, No. 10-5208.

C.B. Aviation began making monthly payments pursuant to the Agreement in April 2008. (C.B. Aviation's Mot. to Open Confessed J., at 4; id., Ex. A.)  In early 2009, Chetty placed the aircraft with a charter company and used the proceeds from chartering the aircraft to fulfill its monthly debt obligations under the Agreement.  (Id. at 4.)  In late August 2009, the charter company arranged for the aircraft to undergo routine maintenance through Hawker Beechcraft Services in Indianapolis, Indiana.  (Id.)  During an inspection, Hawker Beechcraft Services discovered latent cuts in the composite structure of the aircraft.  (Id.)  Based on HBC's alleged admission that these cuts were manufacturing defects, Chetty, on behalf of C.B. Aviation, rescinded the aircraft purchase agreement between C.B. Aviation and HBC, revoked acceptance of the aircraft, and filed suit against HBC in this Court.  (Id. at 3-4.)  The aircraft remains at HBC's facility in Indianapolis, Indiana.  (Pl.'s Emergency Mot. for Permission to Take Possession of Secured Collateral, at 3.)

### A.    Alternative Payment Arrangements

Because of the claimed manufacturing defect, C.B. Aviation could no longer charter the aircraft.  As a result, C.B. Aviation entered into a series of alleged alternative payment arrangements with plaintiff.

### 1.    Amendment to the Agreement

On September 24, 2009, C.B. Aviation entered into an Amendment and Restatement of Loan/Lease Agreement ("the Amendment") with plaintiff, which restructured the payment schedule under the original Agreement.  (Compl., Ex. I.)  The Amendment was also signed by the Guarantors, who "ratified and confirmed the existence of their respective guaranties" and agreed that the Amendment modified each Guaranty to reflect the terms of the Amendment.

4

(Id.)  Under the restructured schedule, C.B. Aviation agreed to repay a principal balance of $3,497,438.26 in forty-seven consecutive monthly payments.  (Id.)  Specifically, the Amendment provided that "commencing on August 1, 2009," C.B. Aviation would make: (1) two payments of "interest only" in the amount of $16,872.03; (2) followed by one payment of "interest only" in the amount of $16,327.77; (3) followed by forty-three consecutive monthly payments of principal and interest each in the amount of $30,708.87; (4) followed by one payment of principal and interest in the amount of $2,837,926.11.  (Id.)  Although the Amendment states that it was "executed and effective as of July 1, 2009," (id.), the parties in fact did not sign the Amendment until September 24, 2009.  (Compl., Ex. I; Pl.'s Obj. to C.B. Aviation's Mot. to Open Confessed J., at 7-8.)

### 2.    Helicopter Proceeds

In addition to the September 24, 2009 Amendment, C.B. Aviation alleges that plaintiff "forced C.B. Aviation to sell a helicopter that [plaintiff] previously financed, so that [plaintiff] could apply the proceeds to the loan for the [aircraft]."  (C.B. Aviation's Mot. to Open Confessed J., at 5.)  Plaintiff's March 2010 internal emails, which were forwarded on to Carl Chetty, reveal that plaintiff received $523,150 from the sale of C.B. Aviation's helicopter—$454,505.33 of which it retained as a security deposit on another loan, and $68,644.67 of which it held for "FUTURE application to" C.B. Aviation's payments on the aircraft loan.  (Id., Ex. B.)

### 3.    Alleged Agreement Regarding the Apartment Building Sales Proceeds

C.B. Aviation alleges that "[d]uring the summer of 2010, Chetty also decided to sell a portion of his interest in an apartment building he owned in Chester County, Pennsylvania," and

that plaintiff agreed that the "proceeds of this sale could be used toward future payments on the outstanding balance on the Loan Agreement." (C.B. Aviation's Mot. to Open Confessed J., at 6.) Plaintiff does not dispute that the parties discussed the possibility that plaintiff might accept proceeds from the sale of the apartment building. (Pl.'s Obj. to C.B. Aviation's Mot. to Open Confessed J., at 13.) Plaintiff asserts, however, that it never reached an agreement with any of the defendants to modify the terms of the loan, and "there were never any discussions that consisted solely of forbearing all performance for the possible proceeds from a single parcel of real estate." (Id. at 13 n.7.)

Regardless of whether plaintiff agreed to accept proceeds from the anticipated apartment building sale, C.B. Aviation admits that "[a]t the end of the summer, . . . issues arose with regard to the sale of the building, and Chetty immediately advised Webster Capital that the funds for such payment would not be available as soon as he originally anticipated." (C.B. Aviation's Mot. to Open Confessed J., at 6.)

### B. C.B. Aviation's Alleged Default

C.B. Aviation stopped making monthly loan payments to plaintiff after March 4, 2010. (Id., Ex. A.) The Agreement defines as an "event of default" the "failure to pay any installment(s) due [under the Agreement] . . . on the due date therefor." (Compl., Ex. A.) By letter dated September 1, 2010, plaintiff notified the defendants that C.B. Aviation was in default under the Agreement and that plaintiff was accelerating the indebtedness and demanding payment "of such accelerated balance, together with any and all applicable sales tax and late fees[,] . . . on or before September 13, 2010. (Id., Ex. K.)

**C.      Dispute Over Payments Made by C.B. Aviation on the Aircraft Loan**

Attached to defendants' motions is a check register which defendants claim reflects

monthly payments made by C.B. Aviation to plaintiff for the aircraft loan.  According to the

check register, the following amounts were paid to plaintiff from August 2009 through March

2010:

|  |  |
|---|---|
| August 6, 2009: | $36,214.51 |
| September 10, 2009: | $19,070.00 |
| October 7, 2009: | $19,070.00 |
| November 6, 2009: | $19,070.00 |
| December 9, 2009: | $36,214.51 |
| January 12, 2010: | $35,429.33 |
| February 16, 2010: | $18,784.48 |
| March 4, 2010: | $18,784.48 |

(C.B. Aviation's Mot. to Open Confessed J., Ex. A.)

Plaintiff contends that the check register is misleading because it reflects C.B. Aviation's
payments to plaintiff for two separate loans: the aircraft loan and a loan to finance a helicopter
purchase.  (See Pl.'s Obj. to C.B. Aviation's Mot. to Open Confessed J., at 9; Affidavit of Bob
Van Tine ¶¶ 4, 8-9.)  Defendants dispute that the check register reflects payments on two
separate loans, and maintain that all of the check register payments were to have been applied to
the aircraft loan.  (C.B. Aviation's Reply in Support of Mot. to Open Confessed J., at 2.)
However, defendants do not offer any evidence or affidavits in support of this contention.

**D.      The Present Litigation**

On October 5, 2010, plaintiff filed a Complaint in Confession of Judgment for Money in
each of the three above-captioned cases.  That same day, the Clerk of Court entered judgment
against the defendants in all three cases in the amount of $4,259,299.72, plus interest calculated
from and after September 1, 2010 at the rate of interest of 18% (i.e., $1,732.25 per day).[2]

Judgment was entered against C.B. Aviation based on the warrant-of-attorney clause in
the Agreement, which states:

> Borrower covenants and agrees that if any amount due hereunder or under any
> schedule is not paid within any applicable grace period provided for therein,
> lender may cause judgment to be entered against borrower, and for that purpose,
> borrower hereby authorizes and empowers lender or any prothonotary, clerk of
> court or attorney of any court of record to appear for and confess judgment

---

[2]      The judgment in the amount of $4,259,299.72 consists of: (1) $3,512,614.55 in principal
and accrued interest; (2) $31,524.85 in "late charges"; (3) $5,277.03 in "fees"; and (4)
$709,883.29 in attorney's fees.  (Compl. ¶ 29.)

against borrower with or without declaration filed, for such sum or sums as may be payable hereunder and with costs of suit, release of errors, without stay of execution and with twenty percent (20%) added as attorney's collection fees, hereby waiving and releasing all relief from any and all appraisment and stay of exemption laws of any state."

(Compl, Ex. A ¶ 9 (emphasis added).)  Judgment was entered against the Guarantors under a similar warrant-of-attorney clause, which also provides for a 20% "attorney's collection fee[]."

(Compl. Against Chetty Builders, Ex. J; Compl. Against Chetty, Ex. J.)

Each defendant, represented by the same counsel, filed a Motion to Open Confessed Judgment and Motion for Stay on November 23, 2010.  In their motions, defendants argue that: the judgments should be opened; the attorney's fees in the warrant-of-attorney clauses are unreasonable and should be modified; and execution of the confessed judgments should be stayed pending resolution of C.B. Aviation's litigation with HBC.  After discussing the law to be applied to defendants' motions and the legal standard applicable to motions to open confessed judgment, the Court will address each of defendants' arguments in turn.

## III.  CHOICE OF LAW

The Agreement and Guaranties each contain a choice-of-law provision.  The Agreement between plaintiff and C.B. Aviation provides that it "shall be governed by and construed in accordance with the laws of the State of Connecticut," (Compl., Ex. A ¶ 9), while the Guaranties executed by Chetty Builders and Chetty state that they "shall be governed, construed and interpreted for all purposes in accordance with the laws of the Commonwealth of Pennsylvania." (Compl. Against Chetty Builders, Ex. J; Compl. Against Chetty, Ex. J.)

Before proceeding to determine whether judgment should be opened in any of the three cases, the Court must engage in a choice-of-law analysis to answer the preliminary question of whether federal, Pennsylvania, or Connecticut law applies to defendants' motions to open

confessed judgment. None of the parties have raised this choice-of-law issue. Instead, the parties have assumed that Pennsylvania law applies to all aspects of defendants' motions to open confessed judgment.

A district court sitting in diversity must engage in a two-step choice-of-law analysis. Chin v. Chrysler LLC, 538 F.3d 272, 278 (3d Cir. 2008). First, the court must determine whether, under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), a matter is procedural or substantive. Chin, 538 F.3d at 278. "If the matter is procedural, and an applicable federal statute, rule, or policy exists, then federal procedural law applies; if the matter is substantive, the court must apply the substantive law of the forum state." Id. Second, "[i]f the court determines that it must apply the law of the forum state, and a choice-of-law question exists, the court must . . . apply the choice-of-law rules of the forum state to determine which state's law applies." Id. (emphasis in original) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).

Applying the two-step analysis to this case, the Court first notes that state law, rather than federal common law, governs the substantive aspects of motions to open or strike confessed judgments. F.D.I.C. v. Deglau, 207 F.3d 153, 166-67 (3d Cir. 2000). Having determined that state law applies, the next step is to apply Pennsylvania choice-of-law rules to determine whether Pennsylvania or Connecticut law applies. See, e.g., Philadelphia Factors, Inc. v. Gordon, No. 98-3578, 1999 WL 225866, at *3 (E.D. Pa. Apr. 16, 1999) (applying Pennsylvania choice-of-law rule to determine whether Pennsylvania or Virginia law should apply to motion to open or strike confessed judgment). "Pennsylvania courts will uphold choice-of-law provisions in contracts to the extent that the transaction bears a reasonable relation to the chosen forum." Gay v.

CreditInform, 511 F.3d 369, 390 (3d Cir. 2007) (citing Churchill Corp. v. Third Century, Inc., 578 A.2d 532, 537 (Pa. Super. Ct. 1990)).

With respect to the Agreement, plaintiff and C.B. Aviation specified that Connecticut law would govern the contract. And in the two Guaranties executed by Chetty and Chetty Builders, the parties specified that Pennsylvania law would govern. Plaintiff is a Connecticut corporation with its principal place of business in Connecticut; Chetty is a Pennsylvania citizen; and Chetty Builders is a Pennsylvania corporation with its principal place of business in Connecticut. Thus, the Agreement and Guaranties bear a reasonable relationship to both Connecticut and Pennsylvania. Applying Pennsylvania law on contractual choice-of-law provisions, the Court concludes that Connecticut law governs the substantive aspects of C.B. Aviation's motion to open confessed judgment, whereas Pennsylvania law governs the substantive aspects of Chetty and Chetty Builders' motions to open confessed judgment.

## IV. LEGAL STANDARD FOR MOTIONS TO OPEN CONFESSED JUDGMENT

Pennsylvania statutorily provides that a confessed judgment shall be opened "[i]f evidence is produced which in a jury trial would require the issues to be submitted to the jury." Pa. R. Civ. P. 2959(e). In order to open a confessed judgment, a party must: (1) act promptly to contest the judgment; (2) allege a meritorious defense; and (3) present evidence of that defense sufficient to warrant submission of the issue to a jury. Two Bros. Scotto, Inc. v. SDG Macerich Props., L.P., Nos. 99-5485, 99-6395, 99-6398, 2000 WL 1052017, at *8 (E.D. Pa. July 24, 2000). "The Pennsylvania rules regarding challenges to confessed judgment require the petitioner to offer 'clear, direct, precise and "believable" evidence' of his meritorious defenses." FDIC v. Deglau, 207 F.3d 153, 168 (3d Cir. 2000). The district court must "accept as true all evidence and proper inferences from it which support the defense while rejecting adverse allegations of the party obtaining the judgment." Id.

Unlike Pennsylvania, the Connecticut General Statutes do not contain a provision specifically addressing the circumstances in which confessed judgments shall be opened.[3] Nevertheless, the general "principles that govern motions to open or set aside a civil judgment are well established." Chapman Lumber, Inc. v. Tager, 952 A.2d 1, 20 (Conn. 2008). Under Connecticut law, a trial court is vested with the discretion to open a judgment if it determines that there is a "good and compelling reason" to do so. Id.

---

[3] In fact, the authority to enter confessed judgments derives not from any Connecticut statute but from Connecticut common law. See Barclays Am./Business Credit, Inc. v. Otterstrom, 673 F. Supp. 128, 134-35 (D. Del. 1987) (citing Curtice v. Scovel, 1 Root, 327 (Conn. 1791)); see also Boosalis Options, LP v. Farnbacher Loles Motorsports, LLC, No. 09-80316, 2010 WL 335651, at *4 (N.D. Cal. Jan. 22, 2010).

## V. DEFENDANTS' GROUNDS FOR OPENING THE JUDGMENTS

Defendants offer three reasons why the judgments should be opened.  First, they argue that C.B. Aviation did not default under the Agreement and that plaintiff therefore did not have grounds for confessing judgment against any of the defendants.  Second, they argue that HBC is liable to C.B. Aviation for the defects in the aircraft, and that it therefore must be joined in plaintiff's suits against defendants.  Third, they argue that a factual issue exists as to the amount of C.B. Aviation's indebtedness.  None of these arguments is persuasive.  The Court therefore denies the three motions to open confessed judgment.

### A. Defendants' Argument That C.B. Aviation Did Not Default Under the Agreement

Defendants claim that C.B. Aviation did not default under the Agreement because: (1) the Amendment provided that C.B. Aviation was only obligated to make "interest only" payments in October, November, and December 2009; (2) on March 29, 2010, plaintiff stated that it would apply the helicopter proceeds to future monthly payments due under the Agreement; and (3) some time in the summer of 2010, plaintiff agreed to accept proceeds from the sale of the Chester County apartment building as payment on the aircraft loan.  The first and second arguments, even if accepted, would excuse payment only until June 2010.  The third argument, which applies to payments to be made in the summer of 2010 and thereafter, is rejected by the Court.  Defendants' contention that C.B. Aviation did not default on its payment obligations is therefore meritless.

#### 1. The Amendment

Assuming, arguendo, that the Amendment permitted C.B. Aviation to make "interest only" payments in October, November, and December 2009—an issue contested by

plaintiff—C.B. Aviation nevertheless would have been required, beginning January 2010, to make monthly payments in the amount of $30,708.87. It did not. Even accepting C.B. Aviation's claim that all payments noted on the check register attached to its Motion to Open Confessed Judgment were to have been applied to the aircraft loan,[4] C.B. Aviation remitted only $18,784.48 to plaintiff in February 2010, and only $18,784.48 in March 2010, instead of the required $30,708.87. (C.B. Aviation's Mot. to Open Confessed J., Ex. A.)

### 2. The Helicopter Proceeds

Plaintiff claims that it used a portion of the helicopter sale proceeds to satisfy the remainder due from C.B. Aviation in February and March 2010. (Affidavit of Bob Van Tine ¶ 14.). However, one of plaintiff's March 29, 2010 internal emails—which was then forwarded on to Chetty—states that the helicopter sale proceeds would be held for "FUTURE application" to C.B. Aviation's aircraft loan payments. (C.B. Aviation's Mot. to Open Confessed J., Ex. B.) Assuming, as C.B. Aviation argues, this email should be interpreted to mean that the $68,644.67 in helicopter proceeds was to be applied toward C.B. Aviation's aircraft loan payments from April 1, 2010 forward, this amount would be sufficient only to cover C.B. Aviation's indebtedness for April and May 2010, and merely $7,226.93 of the $30,708.87 loan payment due for June 2010.

### 3. The Apartment Building Sale Proceeds

Given that C.B. Aviation did not issue any payments to plaintiff after March 4, 2010, it would not have defaulted on payments from June 2010 forward only if its alleged agreement

---

[4]    As discussed, supra, plaintiff contends that the check register in fact reflects payments made by C.B. Aviation on two separate loans: the aircraft loan and a helicopter loan.

with plaintiff regarding proceeds from the sale of the Chester County apartment building exempted it from making the required monthly payments to plaintiff pending completion of the sale. Defendants, however, have not averred that any alleged agreement included such a term, or that there was any consideration for any such agreement. Moreover, "issues arose with regard to the sale of the building" at the "end of the summer" of 2010—meaning that no proceeds from the sale were available in June, July, and August 2010. (Id. at 6.)

Defendants merely assert that plaintiff "represent[ed] that it would accept proceeds from the apartment building sale to apply toward the balance of the loan." (C.B. Aviation's Mot. to Open Confessed J., at 7; see also id. at 12.) But the source of defendants' funds for payment is immaterial. Barring any agreement exempting C.B. Aviation from making payments pending sale of the building, defendants were obligated to continue making payments under the payment schedule established in the Amendment.[5] Thus, given defendants' failure to aver that any alleged agreement with plaintiff entitled them to a reprieve from making loan payments prior to consummation of the apartment-building sale, and even interpreting the disputed facts in the light most favorable to the defendants, the Court concludes that C.B. Aviation defaulted on its loan payments beginning June 2010.

Having determined that C.B. Aviation defaulted on its loan payments, the Court concludes that defendants have not alleged or presented evidence of a meritorious defense, as is

---

[5] While defendants do not allege that the parties reached any agreement permitting C.B. Aviation to discontinue making monthly payments pending sale of the building, plaintiff argues that "there were never any discussions that consisted solely of forbearing all performance for the possible proceeds from a single parcel of real estate." (Pl.'s Obj. to C.B. Aviation's Mot. to Open Confessed J., at 13 n.7.) Moreover, C.B. Aviation knew from a prior application to plaintiff for payment relief that plaintiff would not waive its right to timely monthly payments pending plaintiff's review of that application. (See Affidavit of Walter Greenfield, Ex. A.)

required to open confessed judgment under Pennsylvania law, and that there is no "good and compelling reason" to open confessed judgment under Connecticut law.  See Chapman Lumber, Inc. v. Tager, 952 A.2d 1, 20 (Conn. 2008); Two Bros. Scotto, Inc. v. SDG Macerich Props., L.P., Nos. 99-5485, 99-6395, 99-6398, 2000 WL 1052017, at *8 (E.D. Pa. July 24, 2000).

### D.  Defendants' Argument That HBC Must be Joined

Defendants next argue that judgment should be opened so that HBC can be joined as a third-party defendant.  According to defendants, HBC is liable to plaintiff because C.B. Aviation's "indebtedness would never have arisen if [HBC] represented the true condition of the Aircraft at the time of sale.  Put simply, C.B. Aviation would not have purchased an aircraft with cuts to its composite structure."  (C.B. Aviation's Mot. to Open Confessed J., at 15.) Defendants' argument fails.

First, as a matter of contract, defendants were obligated to make payments to plaintiff regardless of any defects in, or damage to the aircraft.  On February 18, 2008, C.B. Aviation executed a Delivery and Acceptance Receipt ("Receipt"), which was incorporated into the parties' financing agreement and states:

> FAILURE OF THE AIRCRAFT TO . . . WORK PROPERLY UPON DELIVERY MUST BE REPORTED TO [WEBSTER CAPITAL] IMMEDIATELY, BUT SHALL NOT BE A DEFENSE TO PERFORMANCE UNDER THE AGREEMENT.

(Compl., Ex. F.)  The Receipt further states:  "once the vendor is paid (or the check is given to [C.B. Aviation] for delivery to the Vendor), [C.B. Aviation] will be irrevocably bound to perform under the Agreement."  (Id.)  The Agreement itself also provides that "no Event of Loss shall relieve Borrower of the obligation to pay any Obligation or perform any of its duties hereunder," (Compl., Ex. A ¶ 5(m)), and defines an "Event of Loss" as, inter alia, "destruction,

15

damage, contamination or wear which makes repair uneconomical or renders such Aircraft unfit for commercial use." (Id. ¶ 5(j)(i).)  Based on these contractual provisions, it is clear that the parties agreed that any defects in, or damage to the aircraft would not excuse defendants from their payment obligations.  HBC's potential liability to C.B. Aviation for allegedly selling it a non-airworthy aircraft therefore has no bearing on defendants' liability to plaintiff and does not justify opening the confessed judgments in these three actions.

Second, as discussed in Part III, supra, although state law controls the substantive aspects of motions to open confessed judgment, federal rules control the procedures to be applied in federal court, such as those governing the joinder of parties.  Unless joinder of HBC is required under the Federal Rules of Civil Procedure, defendants' mere wish to join HBC as an additional defendant does not constitute a "meritorious defense" to plaintiff's breach-of-contract claims or a "good and compelling reason" to open the judgments.  Cf. Young v. Pileggi, 455 A.2d 1228, 1232 (Pa. Super. Ct. 1983) (holding that mere fact that judgment debtor, who was sole obligor on judgment note, might have possible cause of action against former wife if he paid more than his share of their joint obligation, was not an adequate reason for opening confessed judgment); G.A.C. Credit Corp. v. Acme Accordian Studios, Inc., 286 A.2d 678, 680-81 (Pa. Super. Ct. 1971) (holding that judgment should not be opened to allow for joinder of manufacturer because "even if [the retailer] has a cause of action [against the manufacturer] for breach of [the franchise] contract . . ., this is not a defense on the merits against [the financing company]" that obtained confessed judgment based on the retailer's failure to make payments under the financing agreement).

Under Federal Rule of Civil Procedure 19, HBC need not be joined unless it is a necessary or indispensable party. "A holding that [a party is necessary] under Rule 19(a) is a necessary predicate to the district court's discretionary determination under Rule 19(b)" that a party is "indispensable." <u>Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley</u>, 385 F. App'x 135, 145 (3d Cir. 2010). "Under the Federal Rules, a party is 'necessary' if, in its absence, (1) the court could not accord complete relief among the existing parties; or (2) the absent party claims an interest relating to the subject matter of the action so that disposing of the action in his absence would (i) impair its ability to adequately protect its interest, or (ii) leave an existing party susceptible to a substantial risk of incurring inconsistent obligations." <u>Disabled In Action of Pennsylvania v. Southeastern Pennsylvania Transp. Auth.</u>, --- F.3d --- , 2011 WL 522947, at *8 (3d Cir. Feb. 16, 2011).

HBC is neither an indispensable nor necessary party. The Court is able to afford complete relief to the parties in HBC's absence: HBC was not a party to the financing agreements between the parties, and whether C.B. Aviation can recover from HBC is irrelevant to whether C.B. Aviation defaulted under its Agreement with plaintiff. Defendants are responsible to plaintiff for the confessed judgments entered against them, irrespective of any liability of HBC to C.B. Aviation. For these same reasons, the Court concludes that disposing of the three actions against defendants in HBC's absence neither impairs HBC's ability to adequately protect its interest, nor leaves plaintiff or any of the defendants susceptible to incurring inconsistent judgments. Thus, HBC is not a necessary or indispensable party who must be joined in plaintiff's actions against the defendants, and the judgments should not be opened to allow for its joinder.

Finally, the two Pennsylvania cases cited by defendants in support of opening the judgments to permit HBC's joinder are far from compelling. See Mun. Auth. of Borough of Lewistown v. Chicago Bridge & Iron Co., 54 Pa. D. & C. 2d 691 (Pa. Ct. Com. Pl. 1971); Fluehr v. Pearlstine, Salkin, Hardiman & Robinson, 18 Phila. Co. Rptr. 101 (Pa. Ct. Com. Pl. 1988) ("Fluehr"). Both cases were decided solely based on Pennsylvania procedure, whereas federal procedural rules govern the joinder of parties to proceedings before this Court. Moreover, Chicago Bridge & Iron does not hold or even state that the proposed joinder of an additional defendant is grounds for opening a confessed judgment; rather, it states only that an additional defendant may be joined in Pennsylvania state court after a confessed judgment has been opened. 54 Pa. D. & C. 2d at 693-96.

As for Fluehr, the case is relevant only for its discussion of the Superior Court's non-precedential, unpublished opinion in a related case, Fluehr v. Paolino, 499 A.2d 403 (Table) (Pa. Super. Ct. June 7, 1985) ("Paolino"). According to Fluehr, the Paolino court held that a party who seeks damages against "persons whose wrongful conduct led to the confession of a judgment" against that party must "join[] such persons in the confession of judgment proceeding as additional defendants." 18 Phila. Co. Rptr. at 109. Commenting on Paolino, the Fluehr court noted that the Superior Court cited no precedent in support of its decision, and that the Superior Court never before had held that claims against third parties must be asserted by joining them as additional defendants in a confession-of-judgment action. Id. In light of Paolino's non-precedential status and the published Superior Court decisions refusing to open confessed judgments to allow for the joinder of additional defendants, see Young, 455 A.2d at 1232,

G.A.C. Credit Corp., 286 A.2d at 680-81, the Court declines to rely upon Paolino as a basis for opening the judgments against defendants.

HBC was not a party to defendants' financing arrangement with plaintiff, and the Court has already concluded that defendants defaulted on their payment obligations. Whether HBC is liable to defendants is irrelevant to plaintiffs' actions against defendants. The Court thus concludes that the judgments against defendants should not opened to allow for the joinder of HBC.

### E.  Defendants' Argument as to the Amount of C.B. Aviation's Indebtedness

Defendants' final argument is that judgment should be opened because a factual dispute exists as to the amount of C.B. Aviation's indebtedness. They assert that plaintiff has not provided any evidence that the alleged amount of indebtedness has been offset by the amounts already paid by C.B. Aviation on the aircraft loan.

This is neither a "good and compelling reason" to open judgment, nor a "meritorious defense" to plaintiff's claims against the defendants. Defendants clearly defaulted on their loan obligations, and judgment was rightly entered against them pursuant to the Agreement and Guaranties' warrant-of-attorney clauses. To address defendants' concern, however, the Court will hear evidence and argument to determine the amount of defendants' indebtedness and, if warranted, to modify the amount of the judgments against defendants.

## VI. ATTORNEY'S FEES

The warrant-of-attorney clauses in the Agreement and in both Guaranties provide for a "20% attorney's collection fee[]" in the event that judgment is confessed and entered.  (Compl., Ex. A ¶ 9; Compl. Against Chetty Builders, Ex. J; Compl. Against Chetty, Ex. J.)  The 20% fee amounts to $709,883.29.  (Compl. ¶ 26.)  Defendants argue that this fee is excessive, unreasonable, and should be modified.  (C.B. Aviation's Mot. to Open Confessed J., at 16.)  Plaintiff "agree[s] . . . that the Court may, if it chooses, modify the judgments to reflect the actual amount of attorney's fees incurred in securing the judgments as opposed to the twenty percent (20%) clearly agreed to by the parties."  (Pl.'s Obj. to C.B. Aviation's Mot. to Open Confessed J., at 2.)  To aid the Court in any such potential modification of the attorney's fee, plaintiff's counsel, Howard K. Levine, filed an affidavit dated December 13, 2010, stating that as of that date, plaintiff had incurred $39,095 in attorney's fees and $1,486.69 in expenses. (Affidavit of Howard K. Levine ¶ 4.)

Both Connecticut and Pennsylvania law require that contractual attorney's fee provisions be "reasonable."  Under Connecticut law, "[w]here a contract expressly provides for the recovery of attorney's fees, an award under such a clause requires an evidentiary showing of reasonableness."  Rizzo Pool Co. v. Del Grosso, 240 Conn. 58, 77 (1997).  Pennsylvania likewise requires that a contractual agreement setting attorney's fees be "reasonable," and allows for court modification of unreasonable fee provisions.  See Hous. Mortg. Corp. v. Tower Dev. & Inv. Corp., 402 Pa. 388, 389 (1961); Daly v. Maitland, 11 Lanc. B. 9 (Pa. 1879); L. & N. Sales Co. v. Stuski, 146 A.2d 154, 158 (Pa. Super. Ct. 1958).  In addition, both states recognize the general principle that contractual damages provisions are unenforceable where they act as

penalties rather than liquidated damages.  See Bellemare v. Wachovia Mortg. Corp., 284 Conn. 193, 203 (2007); Pantuso Motors, Inc. v. Corestates Bank, N.A., 568 Pa. 601, 608-10 (2002); see also Robins Motor Transp., Inc. v. Associated Rigging & Hauling Corp., 944 F. Supp. 409, 412 (E.D. Pa. 1996) ("An attempt to fix a particular sum as attorney's fees or set a formula for their calculation must meet the same test as a liquidated damages clause.") (quoting E. Allan Farnsworth, Farnsworth on Contracts, § 12.18, at 295 (1990)).

The Court concludes that the 20% fee of $709,883.29 sought by plaintiff is unreasonable and acts as an unenforceable penalty clause.  As such, the Court will modify the attorney's fee after conducting an evidentiary hearing to determine the amount of a reasonable fee to be awarded in this case.

## VII.  DEFENDANTS' REQUEST FOR STAY OF EXECUTION ON CONFESSED JUDGMENTS

Defendants request that the Court stay execution of the confessed judgments pending resolution of C.B. Aviation's litigation against HBC.  Defendants contend that such a stay "would be both equitable and proper, because, absent [HBC's] breach in selling C.B. Aviation an aircraft that is not airworthy, [defendants] never would have incurred the indebtedness to [plaintiff]."  (C.B. Aviation's Mot. to Open Confessed J., at 17.)  Having determined that the dispute between C.B. Aviation and HBC is irrelevant to plaintiff's actions against defendants, a stay of execution pending the resolution of C.B. Aviation's litigation against HBC is inappropriate.  The Court will, however, stay execution of the judgments until it issues an order modifying the amount of the judgments.

**VIII.  CONCLUSION**

For the foregoing reasons, defendants' Motions to Open Confessed Judgment and Motions for Stay are denied.  The judgments will not be opened and execution of those judgments will not be stayed pending resolution of C.B. Aviation's litigation with HBC. However, because the Court concludes that the judgments should be modified to accurately reflect the amount of defendants' remaining indebtedness and a reasonable attorney's fee, the Court will conduct a hearing limited to the purpose of receiving evidence and argument on those issues, and will thereafter modify the judgments.  Execution on the judgments is stayed until the Court issues an order modifying the judgments.

An appropriate order follows.